IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

STATE AUTO PROPERTY AND
CASUALTY INSURANCE COMPANY                                        PLAINTIFF

v.                                                    CIVIL ACTION NO: 1:21-CV-157-SA-DAS

PRITCHARD ENGINEERING, INC.,
LATOYA A. SANCHEZ, ON BEHALF OF
THE WRONGFUL DEATH BENEFICIARIES
OF ZACHARY WAYNE OSBOURN; and
ANGELA STIMAC, ON BEHALF OF THE
WRONGFUL DEATH BENEFICIARIES OF
WILLIAM THOMAS KIZZIRE                                            DEFENDANTS

ORDER AND MEMORANDUM OPINION

On October 13, 2021, State Auto Property & Casualty Insurance Company ("State Auto")

initiated this civil action by filing its Complaint [1] against Pritchard Engineering, Inc., Latoya

Sanchez (on behalf of the wrongful beneficiaries of Zachary Wayne Osbourn), and Angela

Stimac (on behalf of the wrongful beneficiaries of William Thomas Kizzire). Now before the

Court is State Auto's Motion for Summary Judgment [22]. Having reviewed the parties' filings,

along with the applicable authorities, the Court is prepared to rule.

*Relevant Background*

This is an insurance coverage dispute arising from the events surrounding the deaths of

Zachary Wayne Osbourn and William Thomas Kizzire.

The pertinent events occurred at a construction site for a pre-planned housing project

located at the corner of South Montgomery Street and Lynn Lane in Starkville, Mississippi. The

project took place on land owned by FB Land Company, LLC. A.S. Fornea Construction, LLC

("Fornea") was the developer and contractor for the project. Fornea hired and contracted with

Pritchard Engineering, LLC ("Pritchard") as the project engineer for the site. Osbourn and Kizzire were working on site as independent contractors of Southern Civil Contracting, Inc.

On the morning of May 19, 2020, Osbourn and Kizzire were performing work on site related to the installation of sewer lines. At some point during the process, a large rock formation fell into the trench where they were working, immediately killing Osbourn and trapping Kizzire for several hours. Once Kizzire was freed from the trench, responders transported him, but he died prior to reaching the hospital.

Sanchez and Stimac (on behalf of Osbourn and Kizzire, respectively) filed civil actions in the Circuit Court of Oktibbeha County in August 2020 against Pritchard and others who were involved in the construction project. To be clear, these were two separate lawsuits which arose from the same incident. Both lawsuits remain pending at this time.

In the state court complaints (which were filed separately but include identical allegations), Sanchez and Stimac allege that Fornea hired Pritchard to "[m]aintain safety at the construction site; supervise certain activities at the construction site, including earthwork, excavation, and installation of the sewer system; and to perform regular safety inspections on the construction site." [28], Ex. 1 at p. 4; [28], Ex. 2 at p. 4. The facts section of the complaints then includes the following general allegations as to three duties which all Defendants (which would necessarily include Pritchard) negligently breached:

> 19. [E]ach of the Defendants had a duty to identify and abate or warn [Osbourn and Kizzire] of any such hazardous and dangerous conditions;
>
> 20. [E]ach of the Defendants had a duty to supervise the construction and installation of the sewer line system, including the work [Osbourn and Kizzire] were performing when [they] were killed, and to abate or warn of any dangerous conditions on site;

21. [E]ach of the Defendants had superior knowledge of the hazardous and dangerous conditions that killed [Osbourn and Kizzire], and that each of the defendants owed a duty to [Osbourn and Kizzire] to inspect, oversee, and maintain the safety over the work and the conditions under which [Osbourn and Kizzire] were working when killed.

*Id.* at p. 4-5

In addition to those allegations against all Defendants, Sanchez and Stimac assert a specific negligence claim against only Pritchard based upon the following:

43. Defendant Pritchard had a legal duty to exercise reasonable care for the safety of [Osbourn and Kizzire] and others working at Defendant FB Land and Defendant Fornea's construction site, including, but not limited to overseeing and inspecting the sewer line installation process, enforcing all applicable safety regulations related to the installation of the sewer system, maintaining the safety of the construction site, and warning of hazardous and dangerous conditions at the construction site.

*Id.* at p. 7.

Prior to the commencement of the construction project, Pritchard obtained a Commercial General Liability ("CGL") insurance policy with State Auto. Within the policy is a professional liability exclusion. That policy and the exclusion form the basis of this litigation.

After Sanchez and Stimac filed their state court lawsuits, State Auto filed its Complaint [1] in this Court, seeking a declaration that it is not required to defend or indemnify Pritchard on any of the above allegations. State Auto now seeks summary judgment as to both the duty to defend and the duty to indemnify.

*Summary Judgment Standard*

Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for

3

discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Nabors v. Malone*, 2019 WL 2617240, at *1 (N.D. Miss. June 26, 2019) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

"The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.'" *Id*. (quoting *Celotex*, 477 U.S. at 323). "The nonmoving party must then 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting *Celotex*, 477 U.S. at 324). Importantly, "the inferences to be drawn from the underlying facts contained in the affidavits, depositions, and exhibits of record must be viewed in the light most favorable to the party opposing the motion." *Waste Management of La., LLC v. River Birch, Inc.*, 920 F.3d 958, 964 (5th Cir. 2019) (quoting *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 646 (5th Cir. 1997)). However, "[c]onclusory allegations, speculation, unsubstantiated assertions, and legalist arguments are not an adequate substitute for specific facts showing a genuine issue for trial." *Nabors*, 2019 WL 2617240 at *1 (citing *TIG Ins. Co. v. Sedgewick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)) (additional citations omitted).

*Analysis and Discussion*

As noted above, State Auto asserts that it has no duty to defend or indemnify because the allegations in the underlying complaints fall within the professional liability exclusion of the insurance policy. The Court will address the issues in turn.

The Court begins with the insuring language of the policy, which in pertinent part provides:

4

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damages" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

[22], Ex. 5 at p. 97.

> The professional liability exclusion provides:

> This insurance does not apply to "bodily injury" or "property damage" caused by rendering or failure to render any professional service. This includes but is not limited to:
>> (1) Legal, accounting or advertising services;
>> (2) Preparing, approving, or failure to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs, or specifications.
>> *(3) Supervisory, inspection, quality control, or engineering activities*;
>> (4) Services by you or any engineer, architect, or surveyor who is either employed by you or performing work on your behalf in such capacity, including:
>>> (a) The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or
>>> (b) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications.
>> (5) drawings and specifications[.]

[22], Ex. 6 at p. 1 (emphasis added).

The applicability of the exclusion is the only disputed issue before the Court. This constitutes a question of policy interpretation.

In Mississippi, "the interpretation of an insurance policy is a question of law, not one of fact." *Noxubee Cnty. Sch. Dist. v. United Nat. Ins. Co.*, 883 So.2d 1159, 1165 (Miss. 2004).

"Mississippi insurance law is quite clear that 'when words of an insurance policy are plain and unambiguous, the court will afford them their plain, ordinary meaning and will apply them as written.'" *Id.* at 1163 (citing *Paul Revere Life Ins. Co. v. Prince*, 375 So.2d 417,418 (Miss.1979)). "Any ambiguities in an insurance contract must be construed against the insurer and in favor of the insured and a finding of coverage." *Nationwide Mut. Ins. Co. v. Garriga*, 636 So.2d 658, 662 (Miss.1994). Importantly, "the language in insurance contracts, especially exclusionary clauses, [is] construed strongly against the drafter." *Burton v. Choctaw Cnty.*, 730 So.2d 1, 8 (Miss. 1997). Furthermore, Mississippi courts have concluded that when a contract is silent on the meaning of a professional service, a professional service is one that "[i]nvolves the application of special skill, knowledge and education arising out of vocation, calling, occupation or employment." *QBE Ins. Corp. v. Brown & Mitchell, Inc.*, 591 F.3d 439, 443 (5th Cir. 2009) (citing *Burton*, 730 So.2d at 5-6).

I.  *Duty to Defend*

Under Mississippi law, "the determination of whether an insurance company has a duty to defend depends upon the language of the policy as compared to the allegations of the complaint in the underlying action." *Minn. Life Ins. Co v. Columbia Cas. Co.*, 164 So.3d 854, 90 (Miss. 2014). This is known as the eight-corners test. *Travelers Indem. Co. v. Mitchell*, 925 F.3d 236, 240 (5th Cir. 2019). Under Mississippi's eight-corners test, the question of whether an insurer has a duty to defend the insured against a claim "is resolved by comparing the four corners of the policy with the four corners of the complaint." *Id.* "An insurance company's duty to defend its insured is triggered when it becomes aware that a complaint has been filed which contains reasonable, plausible allegations of conduct covered by the policy. However, no duty to defend arises when the claim falls outside the policy's coverage." *Baker Donelson Bearman & Caldwell, P.C. v. Muirhead*, 920 So.2d 440, 451 (Miss. 2006). "If the complaint states a claim

that is 'within or arguably within the scope of coverage provided by the policy,' then the insurer has a duty to defend." *Mitchell*, 925 F.3d at 240.

In a factually similar case, the Fifth Circuit, based upon a similar professional services exclusion, held that an insurer had no duty to defend. *QBE*, 591 F.3d at 439. In *QBE*, an employee was fatally injured when a trench collapsed during a sewer installation job. *Id.* at 441. The employee's mother filed suit against the engineering firm ("BMI") (which was the project engineer on site) and others, alleging "'[a]s the [engineering] firm overseeing the project, [BMI] . . . owed a duty to [decedent] to perform its *professional responsibilities* as engineers in accordance with the appropriate standards' and that, with negligence and reckless disregard, it breached this duty by failing to take steps to ensure the trench's structural integrity." *Id.* (emphasis added). The engineering firm sought coverage from its insurer pursuant to a commercial general liability policy. *Id.* at 442. That policy contained a professional services exclusion which "excluded claims for bodily injury arising from the rendering or failure to render professional services." *Id.*

Although the district court resolved the coverage issue based upon another provision of the policy, the Fifth Circuit specifically addressed the applicability of the professional services exclusion. *Id.* After comparing the allegations in the complaint to the insurance policy— particularly, the professional services exclusion—the Fifth Circuit concluded that the claims were excluded and that the insurance company did not have a duty to defend. *Id.* at 445. The Fifth Circuit made clear that its decision was based upon the specific allegations of the complaint, explaining that although some of the allegations concerned claims that may not have required the application of special skill, knowledge, and education, the complaint was specific in

attributing the injuries to the engineering firm's breach of *professional responsibilities* and *not the non-technical activities of the firm*. *Id.* at 443-444.[1]

In a more recent decision, the Fifth Circuit upheld a district court's application of a similar professional services exclusion (and grant of summary judgment) where the allegations in the underlying lawsuits only related to the engineering company's professional engineering services. *Hartford Cas. Ins. Co. v. DP Eng'g, L.L.C.*, 827 F.3d 423, 426 (5th Cir. 2016).[2] This declaratory judgment action arose from an industrial accident at a nuclear plant (Entergy) where the engineering contractor (DP Engineering) was removing a stator. *Id.* at 425. To complete this removal, the stator was placed on a gantry. *Id.* At some point during the project, the gantry collapsed, and the stator crashed which resulted in one fatality and several injuries. *Id.* at 426.

Two types of lawsuits against DP Engineering evolved from this accident—(1) a lawsuit filed by Entergy against DP Engineering and one of its workers (John Scroggins) for breach of contract and negligence; and (2) a wrongful death action on behalf of the deceased employee and personal injury actions on behalf of the injured workers against DP Engineering, Entergy, and other companies involved. *Id.* at 426.

DP Engineering sought coverage under its insurance policy with Hartford; however, Hartford alleged it had no duty to defend under the policy. *Id.* That policy contained an exclusion

---

[1] In reaching this conclusion, the Fifth Circuit distinguished *QBE* from some of its previous cases. *See Thermo Terratech v. GDC Enviro-Solutions, Inc.*, 265 F.3d 329, 336 (5th Cir. 2001) (finding a professional services exclusion inapplicable when the conduct causing the accident did not require the exercise of special judgment); *Cochran v. B.J. Services Co. USA*, 302 F.3d 499, 507 (5th Cir. 2002) (finding claims not excluded under a professional services provision where, despite being identified as a "consulting engineering firm," the defendant was the company man on the site and not hired to "design or approve design of any portion of the operation.").

[2] The Court is cognizant that this case was decided under Texas law, but also notes that insurance law in Texas and Mississippi are similar—at least for portions which are applicable here—as both states follow the four/eight corners test. *See, e.g., Auto. Ins. Co. of Hartford v. Lipscomb*, 75 So.3d 557, 559 (Miss. 2011); *Great Am. Ins. Co. v. Beyond Gravity Media, Inc.*, 560 F. Supp. 3d 1024, 1029 (S.D. Tex. 2021).

which "exclude[d] coverage for bodily injury or property damage 'arising out of' DP Engineering's 'rendering or failure to render any professional services….'" *Id.* at 427. Entergy's complaint contained five allegations of negligence involving the removal of the stator and usage of the gantry. *Id.* at 428. Additionally, the complaint alleged that Scroggins (an agent of DP Engineering) was negligent because he "[h]ad superior knowledge and skill, which obligated him to disclose defects and deficiencies of which he was aware." *Id.* The wrongful death and personal injury complaints included various allegations, such as negligence involving the crane that was used during the project, the removal of the stator, and the "[h]iring, supervision, and training of the independent contractors." *Id.* Against DP Engineering, the complaint specifically alleged "DP Engineering: (1) had insufficient policies and procedures to hire and train qualified engineers and other staff; and (2) provided incompetent and unqualified engineers and other staff." *Id.* at 429.

Ultimately, the Fifth Circuit concluded that the claims asserted in both lawsuits fell within the professional services exclusion. *Id.* at 430. In reaching this conclusion, the Fifth Circuit distinguished professional services from administrative services. *Id.* at 428. "Professional services require specialized knowledge or training and involve the exercise of judgment, [and] administrative services usually occur in the execution of a decision that was based on professional judgment." *Id.* In comparing the factual allegations of the lawsuits to the policy language, the Fifth Circuit held that inspecting equipment, failing to require a load test, failing to provide a safe and effective plan for the stator removal, and failing to properly determine the appropriate equipment to safely complete the project all require *special knowledge and expertise*. *Id.* at 429. The Fifth Circuit concluded that, although the person who negligently inspected the crane did not have an engineering degree, the activity of inspecting the crane still required

professional expertise. *Id.* Furthermore, the Fifth Circuit concluded that the allegation that DP Engineering negligently hired, trained, supervised, or retained its employees and contractors did not trigger a duty a defend. *Id.* at 430. Specifically, the Fifth Circuit held that "these allegations fall within the professional services exclusion because they are 'related [to] and interdependent' with the allegedly negligent rendition of professional services, rather than 'independent and mutually exclusive.'" *Id.*

Collectively, the allegations of the lawsuits either related to professional judgment or arose out of DP Engineering's professional engineering services. Therefore, the Fifth Circuit held that the exclusion precluded coverage, and there was no duty to defend or indemnify. *Id.* at 430.

Addressing a different factual context, this Court previously found a professional services exclusion inapplicable where the complaint contained garden variety tort claims, even though those claims relied upon the advice of professionals. *Am. Guar. & Liab. Ins. Co. v. Leflore Cnty.*, 2006 WL 1134229, at *3 (N.D. Miss. Apr. 24, 2006). After a vehicular accident claimed the life of Roosevelt Thomas, his heirs filed a wrongful death action against Leflore County and others. *Id.* at *1. Leflore County sought coverage under its insurance policy with American Guarantee. *Id.* American Guarantee argued that it had no duty to defend based on certain allegations of the complaint and the professional services exclusion contained within the policy. *Id.* In pertinent part, the complaint alleged "[n]egligence on part of the county in the placement of the warning signs." *Id.* American Guarantee argued "[t]hat the placement or non-placement of such signs involves engineering services," and that the professional services exclusion of the policy precluded the claims. *Id.*

This Court ultimately concluded that while the placement of the warning signs may rely on the advice of professionals, the allegation about the negligence of the county in the actual placement of the signs is a general allegation that would fall squarely within the policy. *Id.* at *3.

As noted above, the Sanchez and Stimac complaints allege four total allegations against Pritchard—three general allegations against all Defendants and one allegation specifically against Pritchard. State Auto relies on the exclusion, while Sanchez, Stimac, and Pritchard collectively counter by arguing that some of the allegations contained within the underlying complaints are general negligence claims—as opposed to professional negligence—and thus are not precluded under the professional liability exclusion.

Before analyzing each individual allegation, the Court feels compelled to note a critical distinction between *QBE* and the case at bar. Specifically, the language of the complaint in *QBE* and the underlying complaints here differ significantly. As emphasized above, the complaint giving rise to the lawsuit in *QBE* alleged only professional negligence claims. *See,* e.g., *QBE*, 591 F.3d 439 at 444. ("[T]he complaint is explicit in attributing the accident to the breach of BMI's *professional responsibilities*.") (emphasis added). Conversely, Sanchez and Stimac's complaints do not specifically state that they are based upon a theory of professional negligence. Thus, the Court finds that *QBE* does not require summary dismissal; the Court will instead consider the substance of each allegation individually to determine whether it falls within the exclusion.

The Court will now consider each of the allegations separately.

First, the underlying complaints allege that all Defendants, including Pritchard, "[h]ad the duty to identify and abate or warn [Osbourn and Kizzire] of any such hazardous and dangerous conditions" on the site. *Id.* at p. 4. State Auto, relying on *QBE*, contends this claim falls squarely

11

within the professional liability exclusion because Pritchard was hired for its professional engineering services. On the other hand, Pritchard, Sanchez, and Stimac argue that this should be considered a general negligence claim. Specifically, Sanchez and Stimac contend that an activity such as warning of hazardous and dangerous conditions, even if performed by an engineer, is not necessarily a professional activity.

To accurately analyze this claim, the Court relies on the definition of professional services. As noted above, when the policy does not define "professional services," as is the case here, the Court should look to the case law definition, which as noted above is: a service that "[i]nvolves the application of special skill, knowledge and education arising out of vocation, calling, occupation or employment." *QBE*, 591 F.3d at 443. Here, Sanchez and Stimac allege that Pritchard and others had a duty to warn of hazardous and dangerous conditions *on site*. The Court notes that this contention is not limited to any specific areas on the site but, instead, concerns the site as a whole. Additionally, at this stage of the proceedings, it is unclear what hazardous and dangerous conditions the underlying complaints are referring to. Simply put, the hazardous and dangerous conditions on the site could be related to either Pritchard's professional or general duties. However, considering the unknowns at this stage of the proceedings and that Mississippi law demands that exclusionary clauses to be construed strongly against the drafter and that the duty to defend attaches to any claim which is *arguably* covered under the policy, the Court finds that State Auto should be required to defend this claim. *See*, e.g., *Burton*, 730 So.2d at 5-6; *Am. Guar. & Liab. Ins. Co. v. 1906 Co.*, 273 F.3d 605, 610 (5th Cir. 2001).

Second, the underlying complaints allege that all Defendants, including Pritchard, "[h]ad a duty to supervise the construction and installation of the sewer line system, including the work [Osbourn and Kizzire] were performing when they were killed, and to abate or warn of any

dangerous conditions on site." [28], Ex. 1 at p. 4; [28], Ex. 2 at p. 4. The Court first notes that the quoted language appears to be two separate contentions—(1) a duty to supervise the construction and installation of the sewer line system; and (2) a duty to warn or abate of any dangerous conditions on site. The second prong is almost identical to the first allegation addressed above, and the Court sees no need to address it any further.

As to the duty to supervise the construction and installation of the sewer line system, the Court finds that it does fall within the definition of a professional service—a service that requires the application of special knowledge. Comparing the underlying complaints to the exclusion, Sanchez and Stimac allege that Pritchard was hired to "supervise certain activities at the construction site, including. . . installation of the sewer system[.]" *Id*. at p. 4. The professional liability exclusion clearly precludes claims that involve the supervisory activities of Pritchard's professional services.

The Fifth Circuit addressed a similar activity in *Hartford,* 827 F.3d 423. In *Hartford*, the Fifth Circuit held that the defendants' failure to require a load test, failure to provide a safe and effective plan for stator removal, and failure to properly determine the appropriate equipment to safely complete the project . . . all require[d] special knowledge and expertise." *Id.* at 429. In the Court's view, the construction and installation of a sewer line system is similarly one that would require specialized knowledge and skill. The Court finds that the exclusion clearly precludes coverage as to this allegation.

Third, Sanchez and Stimac allege that all Defendants, including Pritchard, "[h]ad superior knowledge of the hazardous conditions that killed [Osbourn and Kizzire], and that each of the defendants owed a duty to [Osbourn and Kizzire] to inspect, oversee, and maintain the safety

over the work and conditions under which [Osbourn and Kizzire] were working when killed." [28], Ex. 1 at p. 4-5; [28], Ex. 2 at p. 4-5.

Before analyzing this specific allegation, the Court notes that it construes the "work and conditions under which Osbourn and Kizzire were working when killed" language as relating to the installation of the sewer system since the underlying complaints specifically aver that "[a]t the time of the accident, Mr. Osbourn and Mr. Kizzire [were] performing work necessary to install sewer lines for a new pre-planned housing community . . . when a large rock formation fell into the trench in which [they were] working and crushed [them]." *Id.* at p. 3. Thus, considering this language together, it appears clear to the Court that the allegation specifically relates to the working conditions surrounding the construction and installation of the sewer line system.

This allegation specifically states that it is based upon Pritchard's "superior" knowledge. It is logical that such "superior" knowledge could only be obtained through Pritchard's professional services and judgment. Thus, although the subject allegations do not state so explicitly that they are based upon professional services (as the plaintiffs did in *QBE*), the Court nevertheless finds that Sanchez and Stimac have, from a practical standpoint, alleged that this is a professional service. In turn, Sanchez and Stimac both concede that activities such as inspecting and overseeing as it relates to Pritchard's professional services "[a]rguably could fall within the definition of supervisory, inspection, quality control or engineering services" of the professional liability exclusion. [31] at p. 7; [33] at p. 7.

Stated simply, a layperson would not have superior knowledge of hazardous conditions nor be able to inspect, oversee, or maintain the safety over the sewer installation process. These such activities require the application of special knowledge. Therefore, this allegation is

precluded under the professional liability exclusion, and State Auto has no duty to defend the claim.

Moving to the causes of action section of the underlying complaints, the relevant portion of which refer specifically and only to Pritchard, Sanchez and Stimac allege that Pritchard should be held liable for "negligence, willfulness, wantonness, and recklessness[.]" [28], Ex. 1 at p. 7; [28], Ex. 2 at p. 7. Particularly, they aver that Pritchard breached its "[l]egal duty to exercise reasonable care for the safety of [Osbourn and Kizzire] and others working at Defendant FB Land and Defendant Fornea's construction site, including, but not limited to overseeing and inspecting the sewer line installation process, enforcing all applicable safety regulations related to the installation of the sewer system, maintaining the safety of the construction site, and warning of hazardous and dangerous conditions at the construction site." *Id.* at p. 7. The Court, relying on the same analysis set forth above, finds that activities such as overseeing and inspecting the sewer line installation constitute professional services which are precluded under the exclusion. The only determination the Court is left with is whether enforcing safety regulations, maintaining the safety of the construction site, and warning of hazardous conditions are considered professional services.

Sanchez and Stimac argue that these activities do not fall within the professional liability exclusion. Specifically, Sanchez and Stimac contend that "even if [the activities were] performed by an engineer, [they] are not necessarily professional services." [31] at p. 8; [33] at p. 8. Although the underlying complaints do not specifically allege a breach of Pritchard's professional responsibilities, the allegation of enforcing all applicable safety regulations *related to the installation of the sewer system* would fall under the provision of Pritchard's professional services as the on-site engineer. Applying the definition of professional service, the enforcement

15

of safety regulations *related to the installation of the sewer system* would require special knowledge about the installation process as a whole—which a layperson would not have knowledge of. Therefore, coverage as to this sub-allegation is precluded under the exclusion.

In determining whether maintaining the safety of the construction site is considered a professional service, the Court makes a distinction that this is not the same allegation as maintaining the safety over the work and conditions *under which the decedents were killed* (found in the third claim against all Defendants). The Court interprets this specific allegation as specifically relating to the construction site as a whole, rather than the sewer installation process. Unlike the allegations specific to the sewer line installation, the general maintenance of the safety of the construction site may arguably fall outside the purview of the exclusion, as it is unclear at this stage whether that duty is one which would require special knowledge and skill. The Court consequently finds that the duty to defend attaches.

The last sub-section of this claim concerns the duty to warn of hazardous and dangerous conditions *at the construction site*. The Court finds that this contention could arguably fall outside of the scope of the exclusion and that State Auto therefore has a duty to defend it.

As noted above, "[i]f the complaint states a claim that is 'within or arguably within the scope of coverage provided by the policy,' then the insurer has a duty to defend." *Mitchell*, 925 F.3d at 240. In its analysis above, the Court explained its reasoning as to why some of the allegations fall within the exclusion and others, at least arguably, do not.

For reasons set forth above, the Court finds that State Auto has a duty to defend *some* claims asserted against Pritchard and does not have a duty to defend others. The Court is cognizant that the line between these two types of claims might be murky. However, unlike other states in this circuit where the duty to defend a single claim mandates an insurer to defend the

entire lawsuit, Mississippi law is clear that an insurer has no duty whatsoever to defend claims which are not arguably within the policy. *See, e.g., Farmland Mut. Ins. Co. v. Scruggs*, 886 So.2d 714, 719 (Miss. 2004) ("A liability insurance company has an absolute duty to defend a complaint which contains allegations covered by the policy, but it has absolutely no duty to defend those claims which fall outside the coverage of the policy."); *Emps. Mut. Cas. Co. v. Lennox Int'l, Inc.*, 375 F. Supp. 2d 500, 502 (S.D. Miss. 2005); *Wesco Ins. Co. v. Archer Landscape Grp., LLC*, 2018 WL 6112411, at *4 (N.D. Miss. Nov. 21, 2018) (both noting that the insurer has the duty to defend only those claims that are covered under the policy.). In other words, Mississippi law mandates this result.

## II.     Duty to Indemnify

"Under Mississippi law, an insurer's duties to defend and indemnify its insured are distinct and separate duties requiring the use of different standards." *Est. of Bradley ex rel. Sample v. Royal Surplus Lines Ins. Co.*, 647 F.3d 524, 529 (5th Cir. 2011). "Unlike the duty to defend, which can be determined at the beginning of the lawsuit, an insurer's duty to indemnify generally cannot be ascertained until the completion of litigation, when liability is established, if at all." *Id.* at 531. This is because, unlike the duty to defend, which turns on the pleadings and the policy, the duty to indemnify turns on the actual facts giving rise to liability in the underlying suit, whether any damages caused by the insured and later proven at trial are covered by the policy." *Id.*

The Court finds that it would be premature to make a determination as to the duty to indemnify at this stage of the proceedings. This is particularly true in this case, where there are multiple defendants and various asserted theories of liability. To the extent State Auto seeks a determination as to its duty to indemnify, that request is DENIED.

*Conclusion*

For the reasons set forth above, State Auto's Motion for Summary Judgment [22] is DENIED IN PART and GRANTED IN PART. Consistent with the analysis set forth above, State Auto has a duty to defend Pritchard in the underlying state court action on the first allegation, the second prong of the second allegation, and the last two sub-sections of the fourth allegation.

The stay in this case is hereby immediately LIFTED. The Magistrate Judge will hold a case management conference in this case as soon as practical.

SO ORDERED, this the 30th day of March, 2023.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE